IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN LEE PEAKE, | ) |
| | ) |
| Petitioner, | ) |
| | ) CIVIL ACTION NO. 17-0156-CG |
| v. | ) |
| | ) CRIM. ACTION NO. 15-0039-CG-MU |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **REPORT AND RECOMMENDATION**

This cause is before the Court on Petitioner Jonathan Lee Peake's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Doc. 85). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). This Court had previously entered a Report and Recommendation in which it was recommended that Peake's motion be granted based on the pleadings and evidence before the Court at that time. (*See* Doc. 118). In response to that recommendation, the Government filed an objection and an affidavit of J. Clark Stankoski, who was referred to in the original report and recommendation as "CJA Counsel 1." (Doc. 119). After considering the relevant pleadings, United States District Judge Callie V.S. Granade referred this action back to the undersigned for consideration of the objections and the newly submitted evidence. (Doc. 127). After conducting an evidentiary hearing at which Stankoski testified in person, the undersigned hereby **ORDERS** that the original Report and Recommendation (Doc. 118)

be **WITHDRAWN** and that the instant Report and Recommendation be substituted therefor. Based on the testimony at the evidentiary hearings in this case and all relevant pleadings and briefs filed, it is recommended that Peake's § 2255 motion be **DENIED.**

## I. FINDINGS OF FACT

On February 26, 2015, Petitioner Jonathan Lee Peake was charged in a four-count federal indictment as being a felon in possession of a fireman and ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). The indictment alleged that Peake was convicted of manslaughter on May 6, 2014, in the Circuit Court of Dallas County, Alabama and was found to be in possession of a firearm and ammunition on or about October 9, 2014. (*Id.*). He made an initial appearance and was arraigned on March 18, 2015. (*See* docket sheet entry). A federal public defender was initially appointed to represent Peake but, at his request, she filed a motion to withdraw and was replaced by a CJA panel attorney ("CJA Counsel 1") at the pretrial conference. (Docs. 10, 17-1, 23).

On or about May 28, 2015, Peake notified the Court of his intent to plead guilty to Count Three of the indictment. (Doc. 41). Peake and his attorney signed and filed a plea agreement on May 29, 2015. (Doc. 45). In the written plea agreement that he signed, Peake acknowledged that he had consulted with his counsel and fully understood his rights with respect to the charges in the indictment, that he had discussed the facts of the case with his attorney, that his attorney had explained the essential legal elements of the criminal charges that had been brought against him, and that his attorney had explained his understanding of the Government's evidence and the law as it related to the facts of his case. (*Id*. at p. 2). He further agreed that he understood that the United States had the burden of proving each of the legal elements of the criminal charge

2

beyond a reasonable doubt, that he and his attorney had discussed possible defenses to the charge, that he believed that his attorney had represented him faithfully, skillfully, and diligently, and that he was completely satisfied with the legal advice of his attorney. (*Id*.). He agreed in the plea agreement that the Factual Resume, which was incorporated into the plea agreement, was true, correct, and accurate in every respect. (*Id*. at pp. 2, 9). The written plea agreement also provided that the plea of guilty was freely and voluntarily made, was not the result of force, threats, promises, or representations, apart from those representations set forth in the plea agreement, and that Peake was pleading guilty because he was guilty. (*Id*. at p. 3). Peake agreed that he would not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings, except he reserved the right to challenge his sentence on specific grounds and the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion. (*Id*. at pp. 6-7).

The Factual Resume, which Peake signed, stated that he admitted the allegations of Count Three of the Indictment and understood that, in order to prove a violation of § 922(g)(1), the Government had to prove that "the Defendant knowingly possessed ammunition in or affecting interstate commerce" and that "before [he] possessed the ammunition [he] had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense." (*Id*. at p. 10).

Peake appeared before the Court for a guilty plea hearing, with his CJA counsel, on May 29, 2015. During the hearing, he acknowledged that he had received a copy of the indictment, that he had a full opportunity to read it and review it with his lawyer, and that he understood the charges contained in the indictment. (Doc. 79 at p. 3). Peake

also acknowledged that he signed the Plea Agreement and the attached Factual Resume and that he understood the terms and conditions of the plea. (*Id*. at pp. 4-5). He further agreed that no promises had been made to him by anyone and no one had attempted in any way to force him to plead guilty or to pressure him or threaten him in any way. After questioning Peake, the Court found that he was "fully competent and capable of entering an informed plea, that [he was] aware of the nature of the charges and the consequences of [his] plea, and that [his] plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (*Id*. at p. 9). The guilty plea was accepted, and Peake was found guilty as charged. (*Id.* 9; Doc. 44). His sentencing was scheduled for August 27, 2015. (*Id.*).

On July 8, 2015, CJA Counsel 1 filed a motion to withdraw, and he was replaced that same date with another CJA attorney (hereinafter "CJA Counsel 2). (Docs. 46, 47, 48). In August of 2015, Peake prepared and filed a motion to withdraw the guilty plea, *pro se,* prior to the reversal of his state court conviction, on the ground that the Court lacked jurisdiction because his underlying state court felony conviction was void. (Doc. 53). After his state court conviction was overturned, a Motion to Withdraw Guilty Plea and/or to Dismiss Indictment and Motion for Immediate Release from Federal Custody was filed on his behalf by CJA Counsel 2. (Doc. 54). In that motion, CJA Counsel 2 advised the Court that Peake's manslaughter conviction had been reversed by the Alabama Court of Criminal Appeals on August 14, 2015, and he argued that, because of the reversal of the conviction, there was no felony conviction to support the indictment and therefore his motion to withdraw his guilty plea should be granted, the indictment

4

dismissed, and he should be released from custody. (*Id.*). After briefing by both parties, the Court denied Peake's motions to withdraw his guilty plea. (Doc. 61).

Peake's sentencing hearing was held on August 27, 2015. (*See* Doc. 78). At the sentencing hearing, Peake made the following statement:

> And also at the time that I accepted this guilty plea, my attorney advised me that at any given time that that manslaughter charge would be overturned, that my conviction would be – you would rescind that order convicting me or sentencing me or however. Otherwise I would not have pled guilty, I mean. And that – that is the two-prong *Strickland* test proving – I mean, I would not have taken this conviction or agreed to any plea agreement whatsoever had I not been advised that you would overturn this conviction at any given time that that is overturned.

(*Id.* at pp. 4-5). Later in the sentencing hearing, Peake again told the Court: "I would not have pled guilty if I had known that this would all come about like this. When my attorney at the time that I had --." (*Id.* at p. 6). Peake was sentenced to forty (40) months of imprisonment, with three (3) years of supervised release. (Doc. 62).

On September 10, 2015, Peake, through CJA Counsel 2, filed a Notice of Appeal and a motion for CJA Counsel 2 to withdraw and new counsel to be appointed for the appeal. (Doc. 65). A new appellate counsel ("Appellate Counsel") was appointed on September 11, 2015. (Doc. 66). The Eleventh Circuit found that Peak's challenge to the denial of his motion to withdraw his guilty plea was within the scope of his appeal waiver and, because he did not deny that his plea was knowing and voluntary, dismissed his appeal. (Doc. 80). The United States Supreme Court denied *certiorari* on March 20, 2017. (Doc. 82).

On April 10, 2017, Peake filed his motion to vacate in this Court. (Doc. 83). As directed to do so by the Court, Peake filed his amended motion to vacate on this Court's form on April 26, 2017. (Doc. 85). Peake essentially based his motion to vacate on the allegation that his first appointed CJA counsel provided ineffective assistance by not advising him correctly regarding his plea agreement and the effect of the impending reversal of his manslaughter conviction on the plea agreement. (*Id.*). The Government filed a response to Peake's motion to vacate on May 5, 2017, and Peake filed a reply to that response on May 30, 2017. (Docs. 89, 90). On May 30, 2017, Peake filed a motion to amend his motion to vacate to add the argument that the United States District Court did not have subject matter jurisdiction to accept his guilty plea because the underlying state court conviction was void. (Doc. 91).[1]

After several continuances, an evidentiary hearing was conducted on Peake's motion to vacate on October 22, 2019. (*See* Docket Sheet; Doc. 108). Peake was represented by appointed counsel at the evidentiary hearing. (Doc. 102). At the hearing, Peake's initial appointed attorney testified that she represented him at his arraignment on March 19, 2015. (Doc. 108 at pp. 4-5). According to her testimony, she visited him at the Escambia County jail thereafter to go over the discovery in his case and, at that time, he advised her that he wanted her to file a motion to suppress and he was adamant about his desire to go to trial. (*Id*. at pp. 6-7). She further testified that, at that time, he did not want to plead guilty. After she and Peake had a disagreement

---

[1] Because Peake has apparently abandoned this argument as a ground for his motion to vacate, *see, e.g.,* Docs 113 and 116, his motion to amend his § 2255 motion, Doc. 91, is hereby **DENIED.**

6

concerning the motion to suppress, he indicated to her that he wanted a new attorney and wanted her to file a motion to withdraw. (*Id*. at p. 7).

She did, and CJA Counsel 1 was then appointed to represent Peake. CJA Counsel 1 did not testify at the initial evidentiary hearing but did testify at the evidentiary hearing held on May 5, 2021. CJA Counsel 1 testified that, at the time he represented Peake, he was adamant that his state manslaughter case, which was on appeal, would be overturned. CJA Counsel 1 unequivocally denied ever telling or advising Peake that he would be able to withdraw his guilty plea if the underlying manslaughter conviction was overturned. He testified that he had multiple meetings with Peake and thoroughly reviewed all options with him. He testified that, like in all of his cases in which he represented criminal defendants, he presented Peake with his options and did not try to talk him into either pleading guilty or going to trial. His memory of the conversation with Peake was that if he wanted to wait on the outcome of the state court appeal, the better course of action would be to go to trial. He recalled Peake being satisfied with the decision to plead guilty and no longer wishing to go to trial.

CJA Counsel 2 also testified at the evidentiary hearing. He testified that, upon his appointment on July 8, 2015, he reviewed the PSI, the indictment, the preliminary probation report, the factual resume, and the plea agreement. He then traveled to the Escambia County jail to visit Peake on August 5, 2015, to discuss sentencing. (*Id*. at p. 16). At that meeting, Peake advised CJA Counsel 2 about the fact that his manslaughter conviction was on appeal and directed him to two cases that he stated discussed how reversal of his state court conviction would affect his sentencing. (*Id*. at pp. 16-17). He testified that, on August 17, 2015, he filed a motion to withdraw Peake's guilty plea

7

based on the fact that his state conviction had been reversed. (*Id*. at p. 17). CJA Counsel 2 further testified that it was his understanding "that without a conviction, you could not convict somebody of being a convicted felon if you no longer were a convicted felon." (*Id*. at p. 19). He stated that Peake would have brought this fact to his attention and he would have acted on Peake's direction. (*Id*.). After the Court denied his motion to withdraw the guilty plea, CJA Counsel 2 represented Peake at the sentencing hearing on August 27, 2015. (*Id*. at pp.19-20). After the sentencing, CJA Counsel 2 filed a notice of appeal at Peake's request and then withdrew from representation because he does not do appellate work. (*Id*. at pp. 20-21).

Appellate Counsel testified at the hearing that he was appointed to represent Peake on his appeal on September 11, 2015. (*Id.* at p. 26). He testified that he spoke with Peake many times by telephone during the first half of October of 2015 and that, during those conversations, they discussed the fact that his state court conviction had been reversed between the date of his guilty plea and the date of his sentencing. (*Id.* at pp. 26-27). Appellate Counsel further testified that Peake told him that "his lawyer advised him that if he entered a guilty plea and, in the interim, if the underlying manslaughter was reversed, that he would be allowed, without question, to withdraw his guilty plea." (*Id.* at p. 27; Ex. 12).

Peake also testified at the evidentiary hearing. He testified that, at the time he was indicted in federal court, he had been convicted of manslaughter involving an automobile accident and the conviction was on appeal. (*Id.* at pp. 37-38). At that time, it was his understanding and belief based on advice from his state court attorney that his conviction would be reversed. (*Id.* at pp. 38-39). He testified that he told the public

defender who represented him at his arraignment that he "simply was not going to take a plea agreement concerning … [him] being a convicted felon." (*Id.* at p. 39). He testified that he would get irritated in conversations with CJA Counsel 1 any time he would start discussing a plea agreement. (*Id.* at p. 41). He further testified that when he appeared at the courthouse the day of the hearing on the plea agreement, CJA Counsel 1 told him that the Government would agree to drop three of the counts, if he took a plea for the count charging him with possession of ammo. (*Id.* at p. 43). Peake testified that CJA Counsel 1 advised him that, in the event the manslaughter conviction was overturned, that one charge would go away and he would be free to go. (*Id.*). He stated that the only reason he pled guilty was that representation and that he "wholeheartedly" relied on that representation when he signed the guilty plea. (*Id.* at pp. 43-44). He testified that, at the time of the guilty plea, he stated that he was satisfied with the representation of his lawyer because he believed his advice that once the state conviction was overturned, the federal charges would go away. (*Id.* at p. 49). He stated that he thought the contents of the plea agreement were a formality and that "this would all go away" once the state conviction was overturned. (*Id.* at p. 51).

## II. CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate,

set aside or correct the sentence." 28 U.S.C. § 2255(a). In a § 2255 action, the petitioner must prove by a preponderance of the evidence that he is entitled to relief. *Beeman v. United States,* 871 F.3d 1215, 1221-22 (11th Cir. 2017). The sentence in this case was entered after a plea of guilty. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). This waiver does not, however, include claims of ineffective assistance of counsel that implicate the decision to plead guilty. *Id.; see also Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (holding that the defendant's "guilty plea was voluntary and knowingly made" and, therefore, he could not "attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea").

As indicated above, Peake's sole claim is that he is entitled to § 2255 relief because the attorney representing him during the time of his guilty plea rendered constitutionally ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Jones v. United States,* 478 F. App'x 536, 539-540 (11th Cir. 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient

performance prejudiced his defense.").[2] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [he] was prejudiced by that performance." *Demar v. United States,* 228 F. App'x 940, 950 (11th Cir. 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002).[3]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.
>
> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Sec'y, Dep't of Corr.,* 433 F. App'x 852, 855 (11th Cir. 2011) (internal quotation marks and citations omitted); *see also Pair v. Cummins,* 373 F. App'x 979, 981(11th Cir. 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[3] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley,* 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022 (2002).

representation fell below an objective standard of reasonableness."). "Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred." *Pair*, 373 F. App'x at 982. "The court must indulge a strong presumption that the attorney's conduct was objectively reasonable." *Id*.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States,* 288 F. App'x 648, 649 (11th Cir. 2008) (quoting *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984)). With regard to the prejudice prong, the *Hill* Court, recognizing the fundamental interest in the finality of guilty pleas identified in *United States v. Timmreck*, 441 U.S. 780, 784 (1979), held that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 58-59.

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Johnson,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305,

1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204 (2001). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008 (1999); *see also Adamson v. United States,* 288 F. App'x 591, 594 (11th Cir. 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

Peake claims in his § 2255 petition that CJA Counsel 1 provided ineffective assistance at the guilty plea stage because "reasonable counsel would not have allowed [him] to enter into a plea agreement with an appeal waiver" after having advised him that, in the event the state court conviction was overturned, he "would receive relief from the … 922(g) conviction on motion." (Doc. 85 at p. 17). Peake contends that CJA Counsel 1's advice to him that he could plead guilty and then later have the plea set aside was incorrect advice and objectively unreasonable. He further argues that he relied on this incorrect advice when pleading guilty and was prejudiced thereby because he would not have pled guilty and would have insisted on going to trial but for the misadvice. The United States Supreme Court has noted that "[t]he failure of an attorney to inform his client of the relevant law clearly satisfied the first prong of the

13

*Strickland* analysis …, as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (J. White, concurring); *see also Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (noting that the first prong of *Strickland* was not at issue because the Government conceded that plea-stage counsel provided inadequate representation when he assured Lee that he would not be deported if he pleaded guilty). Peake's claim is, thus, dependent upon CJA Counsel 1 having actually provided said misadvice. The United States argues that CJA Counsel 1 did not render such advice to Peake, and therefore, he cannot prove that CJA Counsel 1 rendered a constitutionally deficient performance in this case.

Having heard and reviewed the evidence put forth at the evidentiary hearings, and observed the demeanor of the witnesses, this Court finds that Peake has failed to meet his burden of showing that CJA Counsel 1 advised him that his guilty plea could be withdrawn if his state court conviction was overturned. Although Peake testified to the contrary, CJA Counsel 1, a current state court judge who had practiced for approximately 18 years at the time he represented Peake and had represented over 200 criminal defendants in federal court, testified that Peake's statements that he advised Peake that his guilty plea could be withdrawn if the underlying state court conviction was overturned were patently false. CJA Counsel 1's testimony is supported by Peake's signing of the plea agreement in which he acknowledged that no promises had been made to him that led to him pleading guilty and his acknowledgement of the same at the plea hearing. Such actions weigh heavily against his self-serving argument that his attorney gave him this advice. In addition, CJA Counsel 1 testified that he had

never filed a motion to withdraw a guilty plea in federal court. Accordingly, the Court finds that CJA Counsel 1 did not render such advice or promise to Peake.

Based upon the foregoing, the Court finds that CJA Counsel 1 did not render deficient performance when he represented Peake. Therefore, Peake has failed to meet the first prong of the *Strickland* analysis. *See Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been."). Accordingly, his motion to vacate his due to be denied.

### **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied on the merits of the alleged constitutional claim, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

were "adequate to deserve encouragement to proceed further."'"). In this case, a reasonable jurist could not conclude that this Court is in error for denying Peake's motion to vacate, nor could a reasonable jurist conclude that Peake should be allowed to proceed further with respect to his constitutional claim. Accordingly, Peake is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The undersigned Magistrate Judge **RECOMMENDS** that Peake's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 85) be **DENIED** for the reasons stated above. Peake is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **17th** day of **November, 2021**.

                                                       s/P. BRADLEY MURRAY
                                               **UNITED STATES MAGISTRATE JUDGE**